

U.S. DISTRICT COURT FILED
EASTERN DISTRICT OF LA

2008 OCT -2 PM 12: 50

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BOLLINGER SHIPYARDS LOCKPORT, L.L.C., | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | NO. ___**08-4578**___ |
| | ) | |
| v. | ) | JUDGE _____ |
| | ) | MAGISTRATE JUDGE **SECT. R MAG. 3** |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., | ) | JURY TRIAL REQUESTED |
| | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bollinger Shipyards Lockport, L.L.C. ("Bollinger"), without waiving its right to arbitration, files this Complaint against Defendant Northrop Grumman Ship Systems, Inc. ("NGSS") as follows:

### PRELIMINARY STATEMENT

The claims set forth in this Complaint are subject to arbitration pursuant to the Federal Arbitration Act. Bollinger has filed this Complaint in order to simultaneously: (1) seek a declaratory judgment that it has an enforceable arbitration provision; (2) compel arbitration of these claims, if NGSS will not consent to arbitration of them; and (3) use this Court's power to confirm the award of the arbitrator, when issued, pursuant to the Federal

Fee_ $350.⁵⁰
√ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

-1-

Arbitration Act.   By filing this Complaint, Bollinger does not intend to litigate the substantive claims herein, nor to waive its right to arbitration.

## THE PARTIES, JURISDICTION, AND VENUE

1.      Bollinger is a Louisiana limited liability corporation engaged in the business of constructing, repairing, and converting a wide variety of inland and offshore vessels. Bollinger's principal place of business is located in Lockport, Louisiana.   Bollinger is properly authorized to do business in the State of Louisiana.

2.      Defendant NGSS is a Delaware corporation with its principal place of business in California.   It is registered in the State of Louisiana as a foreign corporation that engages in the business of designing, engineering, and constructing commercial and military vessels.

3.      Halter Bollinger Joint Venture, LLC ("HBJV") is a Louisiana limited liability corporation that contracted with NGSS to perform conversion work on the United States Coast Guard ("USCG") Deepwater Program's ("Deepwater Program" or "Program") 110' Island Class vessels ("Subcontract").   In or about November 2003, HBJV assigned all of its rights and obligations with respect to the conversion of the 110' Deepwater vessels to Bollinger.   According to the assignment, Bollinger acted as the subcontractor to NGSS for this Subcontract.   The disputes that form the basis of this Complaint arise out of the Subcontract. Bollinger has all rights and obligations of HBJV against NGSS to enforce the Subcontract.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the Plaintiff and the Defendant and the amount in controversy exceeds the minimum jurisdictional limits of

US2000 10561138.4

this Court.   Defendant is subject to the jurisdiction of this Court by reason of having transacted business in this State and within this District, including the business out of which this action arises.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including but not limited to, the execution of the Subcontract.   In addition, Defendant has consented to this Court having both personal jurisdiction and venue by expressly designating New Orleans, Louisiana as the locale of the parties' arbitration.

## GENERAL ALLEGATIONS

### A.    BACKGROUND

6.      NGSS and Lockheed Martin Corporation ("LMC") joined together to respond to a USCG Request for Proposal regarding the upgrade and modernization of the Deepwater Program's surface and air assets.   NGSS and LMC eventually joined to form a joint venture called Integrated Coast Guard Systems ("ICGS") to respond to USCG's Deepwater Request for Proposal.

7.      On or about December 2, 1998, NGSS, LMC, and Bollinger entered into a Teaming Agreement whereby Bollinger agreed to assist NGSS and LMC in responding to USCG's Deepwater Request for Proposal.

8.      In consideration for Bollinger's participation, the Teaming Agreement stated that if NGSS and LMC were successful,   NGSS would contract with Bollinger for the construction, repair, and upgrade of all boats equal to or less than 200 feet.

9.      During ICGS' pre-proposal phase, NGSS provided Bollinger information and documents regarding Bollinger's expected scope of work.   NGSS's pre-award documents provided that there would be 49 boats under 200 feet scheduled for conversion.

10.     The Teaming Agreement also provided that Bollinger would submit a quote to NGSS for the conversion of boats under 200 feet in length.

11.     In January 2002, NGSS issued a Request for Quote ("RFQ") to Bollinger for a price to convert <u>all</u> 49 boats.   NGSS issued this RFQ to BSL pursuant to the parties' Teaming Agreement with the intent to incorporate it into ICGS's proposal to USCG.   The relevant sections of NGSS' RFQ provide:

- "Four (4) hulls will be delivered in 2003, with seven (7) hulls scheduled each year there after <u>until all 49 have been completed</u>."

- "The detail design and other engineering services to accommodate these tasks <u>will be broken into several Delivery Orders ("DOs")</u> commencing at Contract Award."

- "<u>The DOs</u> for both the legacy upgrade CLINs [Contract Line Item Number] ... and the new construction CLINs ... <u>are identified for pricing in accordance with Appendix E</u>."

- Appendix E's listed all the CLINs to be covered by the subsequently issued delivery orders.

- "For pricing of this [Statement of Work ("SOW")], the Implementation Plan Baseline 3.1 will be used."

- That the Integrated Master Plan and Integrated Master Schedule were referenced documents.

- Work "<u>will commence with detail design engineering and Long Lead Time Material procurement</u> at contract award, and start fabrication of the first two hulls in 2002."

(Emphasis added.)

12.     In response to NGSS's RFQ, Bollinger submitted its proposal on February 25, 2002. Bollinger's proposal incorporated NGSS's RFQ. Bollinger's proposal also provided that "[v]essel delivery shall be in accordance with the approved Deepwater Implementation plan" and that NGSS was expected to deliver the boats pursuant to the Integrated Management Schedule ("IMS"). The IMS and Implementation Plan set forth when the specific boats—by name and according to their expected condition—were to be delivered to Bollinger for conversion.

13.     Bollinger offered NGSS a firm-fixed price for its performance of the SOW. It was understood by NGSS that Bollinger's firm-fixed price was based upon an average price per boat based on the conversion of all 49 boats.

14.     NGSS incorporated Bollinger's proposal into NGSS's proposal to ICGS, who in turn then incorporated Bollinger's proposal into ICGS's proposal to USCG for the Deepwater Program.

15.     In June 2002, USCG awarded ICGS the Deepwater Program based, in part, upon Bollinger's firm-fixed price proposal for all 49 boats.

16.     In August 2002, NGSS formally accepted Bollinger's proposal dated February 25, 2002 and directed Bollinger to proceed in accordance with Bollinger's proposal.

17.     In accordance with the Teaming Agreement and the Subcontract, NGSS began to issue DOs which were specifically identified in Bollinger's February 25, 2002 proposal. NGSS's DOs were issued for specific tasks and by CLIN number, as specified in Bollinger's

US2000 10561138.4

accepted proposal.  They were issued for previously identified recurring and non-recurring tasks.

**B.    NGSS'S EARLY TERMINATION**

18.    Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

19.    NGSS's issued DOs incorporated USCG's Statement of Work, the Integrated Master Plan, and the IMS.  The DOs also confirmed the parties' previously agreed-to delivery schedule whereby NGSS would deliver 4 boats in 2003, with 7 boats scheduled each year thereafter until the conversion work on <u>all</u> 49 boats was complete.

20.    After issuing DOs for 12 of the 49 scheduled boats, NCGS notified Bollinger to stop work on July 18, 2005.  As of that date, Bollinger had already <u>delivered</u>—and NGSS accepted—the first 6 converted boats and Bollinger had begun work for 6 additional boats.

21.    Bollinger suffered damages as a result of this termination.

22.    On July 18, 2006, Bollinger served NGSS with Bollinger's Termination for Convenience Settlement Proposal ("Termination Proposal").  The Termination Proposal sought the actual costs incurred as a direct result of NGSS's termination in the amount of $15,620,123.

23.    Then, on or about January 4, 2008, Bollinger supplemented its Termination Proposal and adjusted the Termination Proposal down to $12,108,194.

24.    On October 8, 2007, NGSS formally rejected Bollinger's Termination Proposal.

**C.    NGSS'S OTHER CHANGES TO THE CONTRACT**

25.     Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

26.     In addition to terminating the Subcontract, NGSS provided untimely information to Bollinger.

27.     NGSS, through its sole negligence, delivered late, ill-defined specifications and drawings to Bollinger.   Bollinger needed this information in a timely manner to efficiently perform the Subcontract.

28.     Bollinger relied exclusively upon NGSS to deliver timely and accurate information.  NGSS failed to meet its obligation.

**D.     THE PARTIES' ARBITRATION**

29.     The Subcontract between Bollinger and NGSS contains a binding arbitration clause.  Bollinger is contemporaneously filing its Demand for Arbitration with the American Arbitration Association demanding arbitration of the claims and disputes described herein.

30.     A copy of the Demand for Arbitration filed by Bollinger in that Arbitration is attached hereto as Exhibit A.  Bollinger hereby incorporates all allegations from the Demand for Arbitration into this Complaint by reference, as if fully set forth herein.

31.     It is Bollinger's intention to stay this action and proceed with arbitration before the American Arbitration Association.  After the arbitrator has issued his or her award in favor of Bollinger, it is Bollinger's intention to move this Court to confirm that award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9.  Bollinger is also filing this Complaint to ensure that it complies with any applicable requirements for timely commencing an action

US2000 10561138.4

for the recovery of the amount due Bollinger.  By filing this Complaint, Bollinger expressly reserves its right to arbitration.

32.    All conditions precedent to recovery by Bollinger have occurred or have been performed, waived, satisfied, or otherwise excused.

### COUNT ONE
#### (DECLARATORY JUDGMENT—ARBITRATION UNDER THE FEDERAL ARBITRATION ACT)

33.    Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

34.    The terms and conditions of the parties' Subcontract provide that these claims in question shall be decided by arbitration in accordance with the prevailing Commercial Arbitration Rules of the American Arbitration Association.  The parties' Subcontract also provides that the arbitration proceeding shall be conducted in New Orleans, Louisiana.

35.    Bollinger seeks a declaratory judgment from this Court confirming that Bollinger's Subcontract contains an arbitration provision and that Bollinger is entitled to enforce that provision.

36.    Further, the claims asserted herein arise out of or relate to the parties' Subcontract and/or the performance and/or breach thereof, and accordingly are subject to arbitration pursuant to the arbitration agreement.  If NGSS will not consent to arbitration of these claims, it should be compelled to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

## COUNT TWO
### (CONFIRMATION OF ARBITRATION AWARD UNDER THE FEDERAL ARBITRATION ACT)

37.     Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

38.     As noted in the Preliminary Statement, NGSS will be bound by the award of the arbitrator, which proceeding was initiated in accordance with the parties' arbitration provision.

39.     Accordingly, Bollinger requests that this action be stayed pending the arbitration award, and that this Court retain jurisdiction over this action for the purpose of entering judgment against NGSS on that arbitration award, when issued, by way of confirmation of it pursuant to 9 U.S.C. § 9.

## COUNT THREE
### (TERMINATION FOR CONVENIENCE)

40.     Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

41.     The Subcontract contained a termination for convenience clause.

42.     NGSS directed Bollinger to terminate its work on the Subcontract on July 18, 2005.

43.     Since receiving NGSS's termination letter, NGSS has not provided Bollinger any additional boats that would substitute for the work NGSS deleted.

44.     NGSS has caused Bollinger to incur damages and termination costs as a result of NGSS's termination.

45.    Bollinger timely submitted its Termination Proposal on the standard Federal Acquisition Regulation (FAR) Forms 1436 and 1439 along with supporting accounting backup information seeking damages associated with NGSS's termination.

46.    Bollinger has been damaged in an amount exceeding Twelve Million Dollars ($12,000,000), plus interest, plus other reasonable costs, fees and expenses due to NGSS's termination.

## COUNT FOUR
### (BREACH OF CONTRACT)

47.    Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

48.    In the alternative to the termination for convenience cause of action, NGSS's deletion of more than 37 boats from Bollinger's scope of work constitutes a breach of contract.

49.    As a result of NGSS's breach of contract, Bollinger was not able to realize its expected, anticipated profit on these boats.  Accordingly, Bollinger has been damaged in an amount to be proven at the hearing for the anticipated profit on the deleted boats, damages associated with NGSS's actions, plus interest and attorneys' fees.

## COUNT FIVE
### (QUANTUM MERUIT)

50.    Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

51.    In the alternative to the termination for convenience and breach of contract causes of action, Bollinger is entitled to recover its damages under quantum meruit.

US2000 10561138.4

52.     NGSS directed Bollinger to supply materials, equipment, and labor that were necessary to complete the conversion of 12 boats. NGSS accepted and enjoyed the materials, equipment, and labor provided by Bollinger that were necessary to complete the conversion of these 12 boats, which inured to the benefit of and conferred a substantial advantage upon NGSS.

53.     Bollinger rendered the materials, equipment, and labor for these boats under such circumstances whereby NGSS reasonably knew or should have known that Bollinger expected to be compensated by NGSS for the materials, equipment, and labor that it provided.

54.     The reasonable value of the aforesaid materials, equipment, and labor provided by Bollinger for the benefit of NGSS and for which Bollinger has not received payment is in excess of Twelve Million Dollars ($12,000,000). Bollinger also seeks interest on this amount to be determined at the conclusion of the hearing.

55.     Bollinger is therefore entitled to recover in quantum meruit from NGSS for the reasonable value of the benefits rendered to NGSS for which Bollinger has not received payment.

## COUNT SIX
### (UNJUST ENRICHMENT)

56.     Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

57.     In the alternative to the termination for convenience, breach of contract, and quantum meruit causes of action, NGSS has been unjustly enriched by refusing to compensate Bollinger for the materials, equipment, and labor it performed.

-11-

58.     NGSS cannot in good conscience and justice be allowed to retain the materials, equipment, and labor that Bollinger provided to NGSS without compensating Bollinger for the amount to which it is equitably entitled.

59.     Therefore, Bollinger demands judgment in its favor for the value of the aforesaid materials, equipment, and labor provided by Bollinger for the benefit of NGSS, for which Bollinger has not received payment, to which Bollinger is equitably entitled, plus interest.

## COUNT SEVEN
### (PROMPT PAYMENT VIOLATION)

60.     Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

61.     Bollinger has performed in accordance with the provisions of its Subcontract with NGSS, including, but not limited to, providing all contractually required documentation.

62.     Bollinger submitted invoices for work performed and NGSS failed to approve or pay all or a portion of the invoices within 12 business days.

63.     NGSS also failed to pay Bollinger within 7 days after receipt of good funds.

64.     NGSS failed to disclose to Bollinger, at the time of the entering into the Subcontract, the due date for receipt of payments to Bollinger from NGSS.

65.     Bollinger has requested payment for its termination costs and NGSS has refused to pay Bollinger for these costs as well.

66.     NGSS has violated the New York Prompt Pay Act, N.Y. GEN. BUS. LAW § 756, *et. seq.* (McKinney 2003) ("Prompt Pay Act"), through NGSS's failure to pay Bollinger within 7 days, NGSS's failure to approve or disapprove of the invoices, and

-12-

NGSS's failure to disclose the due date for receipt of payments, as required by the Prompt Pay Act.

67.    Therefore, Bollinger demands judgment in its favor pursuant to the New York Prompt Pay Act for the recovery of interest, and all other relief, in an amount to be proven at the hearing for the remaining unpaid balances of the invoices.

## COUNT EIGHT
### (ATTORNEYS' FEES)

68.    Bollinger incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

69.    Bollinger has performed in accordance with the provisions of its Subcontract with NGSS and sought payment for its work.

70.    NGSS acted with actual malice through intentionally seeking to inflict economic injury on Bollinger by forcing it to engage counsel to recover upon the invoices, along with each of the acts described and incorporated throughout this Complaint.  NGSS has intentionally failed to pay Bollinger for work performed in accordance with the Subcontract.

71.    NGSS's continuous and systematic acts are motivated by disinterested malevolence on NGSS's part.

72.    The attorneys' fees incurred by Bollinger are proximately related to NGSS's intentional failure to pay the invoices, among other acts.

73.    Therefore, Bollinger demands judgment in its favor for the recovery of reasonable attorneys' fees as a result of this arbitration.

WHEREFORE, Bollinger respectfully prays:

-13-

(a)     That judgment be entered in favor of Bollinger and against NGSS on Count One of this Complaint, that this Court declare Bollinger has an enforceable arbitration provision, and that arbitration of the claims set forth herein, as well as any other claims arising out of or relating to the Subcontract, be compelled pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-9;

(b)     That judgment be entered in favor of Bollinger and against NGSS on Count Two of this Complaint, and that any arbitration award, when issued, in favor of Bollinger be confirmed pursuant to the Federal Arbitration Act, 9 U.S.C. § 9;

(c)     That an award be entered in favor of Bollinger and against NGSS on Count Three of this Complaint for an amount exceeding Twelve Million Dollars ($12,000,000), plus interest, attorneys' fees, and other reasonable costs and expenses incurred in settling this dispute;

(d)     In the alternative, that an award be entered in favor of Bollinger and against NGSS on Count Four of this Complaint for breach of contract in an amount to be proven at the hearing, attorneys' fees, plus interest and other reasonable costs and expenses incurred in settling this dispute;

(e)     In the alternative, that an award be entered in favor of Bollinger and against NGSS on Count Five of this Complaint for the reasonable value of the benefits rendered to NGSS for which Bollinger has not received payment, attorneys' fees, plus interest and other reasonable costs and expenses incurred in settling this dispute;

(f)     In the alternative, that an award be entered in favor of Bollinger and against NGSS on Count Six of this Demand for Arbitration for the amount to which Bollinger is

-14-

equitably entitled, attorneys' fees, plus interest and other reasonable costs and expenses incurred in settling this dispute;

(g)     That an award be entered in favor of Bollinger and against NGSS on Count Seven of this Complaint for interest in an amount to be proven at the hearing on the unpaid balance as provided by N.Y. GEN. BUS. LAW § 756-b;

(h)     That an award be entered in favor of Bollinger and against NGSS on Count Eight of this Complaint for reasonable attorneys' fees; and

(i)     For a trial by jury.

Respectfully submitted,

LEMLE & KELLEHER, L.L.P.

By: _____
       Patrick Johnson, Jr., T.A. (#07322)
       James C. Butler (#01279)
       Brent C. Wyatt (#25308)
       Wesley M. Plaisance (#31289)
       601 Poydras Street, 21st Floor
       New Orleans, LA 70130
       Telephone:  (504) 584-9417
       Facsimile:  (504) 584-9142

       **Attorneys for Plaintiff, Bollinger
       Shipyards Lockport, L.L.C.**

#695205

US2000 10561138.4